1974282.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL R. GOSS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:13-cv-607 |
| v. ) | |
| ) | Honorable Christopher C. Conner |
| STANDARD STEEL, LLC, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO STRIKE THE
## SUPPLEMENTAL EXPERT REPORT OF DR. PAUL D. WILLIAMS, D.O.

Defendant Standard Steel, LLC, ("Standard Steel"), through its undersigned counsel, files this Memorandum of Law in Support of its Motion to Strike the Supplemental Expert Report of Dr. Paul D. Williams, D.O.

### I.   PROCEDURAL HISTORY

Plaintiff claims that Standard Steel interfered with his right to take unpaid leave under the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, *et. seq.* ("FMLA"), by terminating his employment. [Doc. 1]  On April 23, 2014, Plaintiff filed a Motion for Summary Judgment [Doc. 30], Plaintiff's Statement of Material Undisputed Facts ("Plaintiff's SOF") [Doc. 35] and a Brief in Support [Doc. 31].  Appended to Plaintiff's SOF at Exhibit L (filed under seal) is the first proffered expert report ("Original Report") of Dr. Paul D. Williams, D.O. ("Dr.

Williams"). On April 30, 2014, Standard Steel filed its Motion for Summary Judgment, Statement of Undisputed Material Facts, and Brief in Support. [Doc. 36-38] On May 2, 2014, Standard Steel filed a Motion to Strike the Plaintiff's Expert Report and a Brief in Support. [Doc. 39-40] Standard Steel's Brief in Support of its Motion for Summary Judgment and its Motion to Strike Plaintiff's Expert Report demonstrated the impropriety of Plaintiff's proffered Original Report. On May 16, 2014, Plaintiff filed a Brief in Opposition ("Brief in Opposition") to Standard Steel's Motion to Strike the Original Report. [Doc. 45] Attached as Exhibit A thereto is the proffered Supplemental Expert Report ("Supplemental Report") of Dr. Williams, which the undersigned received by e-mail on May 16, 2014. On May 21, 2014, Plaintiff filed a Brief in Opposition to Standard Steel's Motion for Summary Judgment. [Doc. 46] Notably, this Brief relies extensively on the Supplemental Report in an attempt to establish that Plaintiff suffered from a serious health condition during the Relevant Dates.[1] Standard Steel, for the reasons discussed below, now moves to strike the Supplemental Expert Report.

## II.    STATEMENT OF FACTS

For a full background of this case, please see the Statement of Undisputed Material Facts Standard Steel filed contemporaneously with its Motion

---

[1]      The Relevant Dates are December 5, 2011 through January 9, 2012.

for Summary Judgment [Doc. 37], as well as the Counterstatement of Undisputed Facts Standard Steel filed contemporaneously with its Brief in Opposition to Plaintiff's Motion for Summary Judgment [Doc. 44].

## III.   QUESTION PRESENTED

1.    Should this Court strike Plaintiff's proffered Supplemental Report?

(Suggested answer in the affirmative).

## IV.   ARGUMENT

### A.   Overview

Plaintiff bears the burden of demonstrating the admissibility of the Supplemental Report.  In re TMI Litigation, 35 F.3d 717, 741-42 (3d Cir. 1994) (proponent of expert testimony bears the burden of establishing that proffered expert testimony is admissible).  Meanwhile, the role of a trial court is to perform a gatekeeping function to ensure that proffered expert testimony is both helpful in determining the issue at hand and is trustworthy/based on scientifically valid considerations.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 529-93. (1993).[2]  Performing its gatekeeping function, this Court should strike the proffered Supplemental Report because it: (1) is offered for an improper purpose;

---

[2]    A trial court's function as gatekeeper is the same regardless of whether the case is scheduled for trial by judge or jury.  Proctor v. Taso, Case No. 97-2330, 164 F.3d 625 at *3 (4th Cir. Sept. 24, 1998) (unpublished table decision).

(2) renders an impermissible legal conclusion; (3) is not helpful; and (4) is unreliable.

**B.    This Honorable Court Should Strike the Supplemental Expert Report.**

> *1.    The Supplemental Report is Proffered for an Improper Purpose.*

A supplemental expert report is proper if it is proffered to correct earlier provided information that is inaccurate or incomplete. <u>Mineba Co., Ltd. V. Papst</u>, 231 F.R.D. 3 (D.D.C. 2005).    A party may not, however, "use a supplemental report to disclose information that should have been disclosed in the initial expert report … [a]ccordingly, *a supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original report is beyond the scope of proper supplementation* and subject to exclusion …" James W. Moore et. al., <u>Moore's Federal Practice</u>, §26.131[2] (3d ed. 2014) (*citing, inter alia,* <u>In re Asbestos Prod. Liab. Litig. (No. VI)</u>, 289 F.R.D. 424, 425-26 (E.D. Pa. 2013)).

The clear intention of the Supplemental Report is to strengthen and deepen the opinions expressed in the Original Report.  The Supplemental Report does not hide its intention, opening by stating that, "I have had an opportunity to review the legal documents provided to me challenging my opinion in this case." [Doc. 45, Exhibit A]  Further, the Brief in Opposition states that "[w]hile Plaintiff

does not agree with the alleged deficiencies raised by the Defendant ... the supplemental report provided by Dr. Williams cures any such deficiency to the extent they existed" [Doc. 45, p. 3], and "Dr. Williams addresses the alleged deficiencies in his original report..." [Doc. 45, p. 4]. Lest there be any doubt as to the improper purpose of the Supplemental Report, one need only look to the obvious changed conclusions between the two reports. Whereas, the Original Report concluded that Plaintiff suffered from several symptoms, but *never* stated that those symptoms incapacitated the Plaintiff at any point,[3] the Supplemental Report states, for the first time, that Plaintiff's symptoms "would have caused him to miss work ..."

Because Plaintiff's Supplemental Report is admittedly an attempt to strengthen the Original Report by addressing the criticisms leveled at it, it must be struck. Gallagher v. Southern Source Packaging, LLC., 568 F.Supp. 2d 624 (E.D.N.C. 2008) ("Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report ... '[t]o rule otherwise would create a system where preliminary reports could be followed by

---

[3]    The Original Report's recitation of the symptoms that Plaintiff suffered from also renders it unhelpful because it is reflective of nothing more than a reading of Plaintiff's medical record, for which an expert is not necessary.

supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given'") (quoting Beller ex. Rel. Beller v. United States, 221 F.R.D. 696, 701 (D.N.M. 2003), additional citations omitted).

### 2. *The Supplemental Report Impermissibly Offers a Legal Conclusion.*

While the Supplemental Report avoids the blatantly overt legal conclusion offered up in the Original Report (that Plaintiff suffered from a "serious health condition"),[4] it nonetheless supplies a legal conclusion by concluding that, *inter alia,* "It is my opinion that when you look at this case as a 'whole' and NOT individual parts -- that treatment records AFTER his [Plaintiff's] termination are key to understanding the entire case." (emphasis in original) [Doc. 45, Exhibit A] What evidence is and is not relevant to the *case* (as opposed to Plaintiff's medical condition) is a legal conclusion for this Court to determine. Hayduk v. City of Johnstown, No. 3:2005-294, 2009 WL 3335355 at *1 (W.D. Pa. Jun. 4, 2009) (striking portions of expert report that make legal conclusions).

### 3. *The Supplemental Report Is Not Helpful.*

A plaintiff must demonstrate that he was entitled to FMLA leave on the dates he missed work that resulted in his termination. Criscitello v. MHM

---

[4]     That Plaintiff suffered from a "Serious Health Condition" was the entire premise and sole conclusion reached in the Original Report and, as such, it should be struck.

Services, Inc., No. 4:10-cv-02004, 2013 WL 4049724 at *4 (M.D. Pa. Aug. 9, 2013). However, the Supplemental Report relies entirely upon medical information Plaintiff learned *after his termination* from Standard Steel. Thus, it is patently unhelpful to resolving any issue in this case because such "evidence" fails to demonstrate that Plaintiff was incapacitated during the Relevant Dates. Also, the Supplemental Report's necessary implication that Plaintiff did not know what was wrong with him until *after* his termination obliterates Plaintiff's argument that he was incapacitated due to a serious health condition during the Relevant Dates because no medical evidence would have existed (such as a medical provider stating that Plaintiff was too ill to work) during the Relevant Dates to support Plaintiff's contention that he suffered from a serious health condition. Thus, it is not helpful to the resolution of any material issue in this case. Scharr v. Leigh Valley Health Services, Inc., 598 F.3d 156, 161 (3d Cir. 2010) (medical evidence necessary to show that complained of incapacitation was due to serious health condition); Perk v. Nystar Clarksville, Inc., No. 3:12-0913, 2014 WL 1379170 at *3 (M.D. Tenn. Apr. 8, 2014) (to demonstrate serious health condition, health care provider must determine that plaintiff cannot work on dates in question because of illness); In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 741-43 (3d Cir. 1994) (expert testimony must assist the trier of fact in resolving a material issue in the case; "Rule 702's 'helpfulness' standard requires a valid *scientific* connection

-7-

to the pertinent inquiry as a precondition to admissibility") (emphasis in original/quoting <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 591 (1993)).

Along these lines, the Supplemental Report, without review of any new medical evidence,[5] purports to " specifically identify ... what symptoms suffered by Mr. Goss manifested themselves in a manner that rendered Mr. Goss unable to work during those relevant dates, and that these exact symptoms actually caused Mr. Goss to miss work from December 2011 until February 2012." The Supplemental Report fails to keep this promise. Rather, the Supplemental Report states, *inter alia,* that symptoms of HIV:

> "**may** include headache, fever, nausea and vomiting, and muscle and joint pain. Symptoms of AIDS -- or progression of HIV disease **may** include chronic fatigue, blurred or distorted vision, fever, chills or night sweats. Additionally, the first manifestation of symptomatic HIV infection are neurological symptoms -- **occurring in 10-20% of patients and up to 60% of advanced HIV disease patients.** These symptoms include altered mental status or generalized seizures. Any of these symptoms **could** cause **someone** to miss time from work (absenteeism) or cause decreased work output (presentivism). In Mr. Stuter's deposition, there is one episode on 12/5/2011 that **I believe** was manifestation of some of these symptoms

---

[5]     The Supplemental Report states that it was prepared after having an opportunity to "review the legal documents provided to me challenging my opinion in this case. I have also had the opportunity to review the deposition of Ronald Stuter, the supervisor for Mr. Goss, which was taken on April 15, 2014, after the date of my original report." While Mr. Stuter's deposition was taken after Dr. Williams' initial report, none of the information from Mr. Stuter's deposition that was used in the Supplemental Report was unavailable to Dr. Williams' during the drafting of his initial report. The December 5, 2011 incident about which Mr. Stuter testified in his deposition (wherein Plaintiff took a sleep aid, Ambien, too close to the start of his shift) was recounted in the deposition of the plant nurse, Christine Erhart (Erhart Depo. pp. 21-23), which Dr. Williams admits reviewing prior to his Original Report.

when Mr. Goss was found to be confused and disoriented." (emphasis added)

This is nothing more than Dr. Williams stating what HIV *may* do in *some* patients, and, without any tying logic based on medical evidence or an examination of Plaintiff, reaching the unsupported conclusion that he *believes* a manifestation of symptomatic HIV infection occurred in the Plaintiff on December 5, 2011, and that such manifestation necessitated Plaintiff missing work.

Not only is this conclusion entirely different from the one espoused in the Original Report, as detailed above, but it also is not based on any medical evidence. Dr. Williams has not pointed to any medical records demonstrating that Mr. Goss was infected with HIV on December 5, 2011. This new speculative conclusion, based on nothing new and no medical evidence whatsoever, is patently unhelpful. Hamilton v. Emerson Elec. Co., 133 F.Supp.2d 360, 372 (M.D. Pa. 2001) (holding that "[a]n expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation") (quote/citations omitted)). Indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit evidence that is connected to existing data only by the *ipse dixit* of the expert." General Electric Company v. Joiner, 522 U.S. 137, 146 (1997).

Furthermore, the Supplemental Report's statement that "[i]t was certainly NOT Mr. Goss' fault for not insisting he be referred sooner as he trusted

1974282.1

his treating care provider," is not helpful because any lay person can make up their mind whether failing to seek medical care at a specific time is or is not someone's fault.[6] *See* Hamilton, 133 F.Supp. 2d at 374 ("Dr. Wilcox's testimony should be excluded because it would not assist the jurors in determining anything that they could not determine themselves").

### 4. *The Supplemental Report Is Unreliable.*

A critical issue in this case is whether Plaintiff can demonstrate that he was unable to work on the Relevant Dates due to a serious health condition. Because of the FMLA's requirements that medical evidence support the finding of incapacity, and that a medical provider determine that the Plaintiff is too ill to work, this necessarily requires that any testifying doctor have examined the Plaintiff at or near the time of the alleged incapacity  Perk, 2014 WL 1379170 at *3. The Supplemental Report, however, is based upon nothing more than Dr. Williams' review of Plaintiff's medical records, deposition transcripts and selected docket entries two years after the Relevant Dates. Thus, as explained above, the Supplemental Report is based upon nothing more than speculative presumptions, rendering it unreliable. Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 152 (1999) (to demonstrate reliability, an expert must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

---

[6]     Nor is such a statement relevant to any matter in the case.

relevant field."); Player v. Motiva Enterprises, LLC., 240 Fed. App'x 513, 520 (3d Cir. 2007) ("In order for the expert testimony to be reliable, we have required that the testimony be based on the methods and procedures of *science*, rather than on subjective belief or unsupported speculation") (emphasis added/quotation/citation omitted)).

## V.  CONCLUSION

For all of the foregoing reasons, Standard Steel respectfully requests that the Court grant its Motion to Strike the Supplemental Expert Report of Dr. Paul D. Williams, D.O.

Respectfully submitted,

/s/ Robert B. Cottington

Robert B. Cottington
PA51164 / rcottington@cohenlaw.com
Jill L. Bradley
PA85892 / jbradley@cohenlaw.com
Ryan W. Colombo
PA205842 / rcolombo@cohenlaw.com

**COHEN & GRIGSBY, P.C.**
625 Liberty Avenue
Pittsburgh, PA  15222-3152
Telephone:  (412) 297-4900

Counsel for Defendant,
Dated:  June 16, 2014                   Standard Steel, LLC

1974282.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Strike the Supplemental Expert Report of Dr. Paul D. Williams, D.O. was filed electronically on June 16, 2014. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Robert B. Cottington