## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL R. GOSS, JR.,** | : | **CIVIL ACTION NO. 1:13-CV-0607** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **STANDARD STEEL, LLC,** | : | |
| | : | |
| **Defendant** | : | |

### <u>MEMORANDUM</u>

Plaintiff Paul R. Goss, Jr. brings the above-captioned action pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiff alleges that defendant Standard Steel, LLC violated the FMLA by failing to notify plaintiff about his eligibility for FMLA benefits and by unlawfully terminating him during an extended absence from work. Presently before the court are the parties' cross-motions for summary judgment (Docs. 30, 36). Also pending are defendant's motions to strike the original (Doc. 39) and supplemental (Doc. 50) reports of plaintiff's expert witness. For the reasons that follow, the court will grant defendant's motion for summary judgment.

## I.   <u>Factual Background and Procedural History</u>[1]

Plaintiff Paul R. Goss, Jr. ("Goss") was employed by defendant Standard

Steel, LLC ("Standard Steel") from 1997 to 2012.  (Doc. 35 ¶ 1; Doc. 44 ¶ 1).  During

the relevant time period, Goss worked in the Advanced Forging and Machining

Department.  (Doc. 37 ¶ 2; Doc. 47 ¶ 2).  In 2011, Goss began to experience a number

of health issues.  On June 22, 2011, Goss saw his primary care physician, Jennifer

Sunderland, PA-C ("Sunderland") of Family Health Associates ("FHA"), for

headaches, a white film in his mouth, and sinus-related problems.  (Doc. 35 ¶ 6; Doc.

44 ¶ 6).  Goss subsequently developed chest pain when swallowing and other

digestive issues.  (Doc. 35 ¶ 7; Doc. 44 ¶ 7).  On August 18, 2011, after an appointment

with Sunderland, Goss was diagnosed with unspecified dysphagia, *inter alia*, and

began empiric treatment for thrush and esophageal reflux.  (Doc. 35 ¶ 7; Doc. 44

¶ 7).  Sunderland also recommended that Goss undergo an X-ray, ultrasound, and

endoscopy.  (Doc. 37 ¶ 11; Doc. 47 ¶ 11).  On September 22, 2011, Goss received an

endoscopy, which indicated mild gastritis and a stricture of the gastroesophageal

junction.  (Doc. 35 ¶ 9; Doc. 44 ¶ 9).  On October 12, 2011, Goss visited FHA for

---

[1] Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  L.R. 56.1.  A party opposing a motion for summary judgment shall file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement of material facts and noting genuine issues to be tried.  Id.  Unless otherwise noted, the factual information contained herein is derived from the parties' statements of material facts.  (Docs. 35, 37, 44, 47).  To the extent that facts are undisputed or supported by record evidence, the court cites directly to both parties' statements of material facts.

2

continued epigastric pain and was diagnosed with esophagitis reflux, *inter alia*. (Doc. 35 ¶ 10; Doc. 44 ¶ 10).  FHA provided Goss with work excuses for medical-related absences from August 17 to August 19, 2011[2] and from October 20 to October 21, 2011.  (Doc. 35 ¶¶ 8, 13; Doc. 44 ¶¶ 8, 13).  The work excuses stated that Goss was under the professional care of FHA and was unable to work on the dates identified. (Doc. 35 ¶¶ 8, 13; Doc. 44 ¶¶ 8, 13).

On the morning of December 5, 2011, Goss did not feel well at work.  (Doc. 35 ¶¶ 14, 47; Doc. 44 ¶¶ 14, 47).  Goss's supervisor, Ronald Stuter ("Stuter"), found Goss wandering around his machine in a daze with "glassy" eyes and slurred speech. (Doc. 35 ¶ 47; Doc. 44 ¶ 47).  Goss told Stuter that he did not know what was wrong. (Doc. 35 ¶ 47; Doc. 44 ¶ 47).  Stuter transported Goss to Standard Steel's dispensary to see the company nurse, Christine Erhart ("Erhart").  (Doc. 35 ¶ 14; Doc. 44 ¶ 14). Goss complained to Erhart that he felt tired, shaky, and unsteady on his feet.  (Doc. 35 ¶ 14; Doc. 44 ¶ 14).  According to Erhart, Goss informed her that he had taken a sleeping pill late the night before and did not receive enough sleep.  (Doc. 35-7, Ex. F at 23:12-21).  Erhart sent Goss home.  (Doc. 31 at 9; Doc. 44 ¶ 14).  Goss did not return to Standard Steel after December 5, 2011.  (Doc. 35 ¶ 15; Doc. 44 ¶ 15).  On December 15, 2011, Goss called Sunderland and informed her that his epigastric pain had not improved.  (Doc. 35 ¶ 21; Doc. 44 ¶ 21; Doc. 37 ¶ 18; Doc. 47 ¶ 18).

---

[2] The record does not make clear whether Goss worked on August 19, 2011. Notwithstanding the work excuse stating that Goss was unable to work from August 17 to August 19, 2011, Goss avers in his briefs that he missed work only on August 17, 2011 and August 18, 2011.  (See Doc. 31 at 12; Doc. 46 at 11).  Goss testified that he received a chest X-ray on August 19, 2011.  (Doc. 37-1, Tab A at 30:19-25).

Sunderland purportedly informed Goss that she had done all that she could for him, advised him to modify his medication, and scheduled an appointment with a gastrointestinal specialist for January 31, 2012.  (Doc. 35 ¶ 21; Doc. 44 ¶ 21; Doc. 37 ¶ 18; Doc. 47 ¶ 18).

Between December 6 and December 13, 2011, Goss called Standard Steel on multiple occasions either to call off sick or to report back to work.  (Doc. 35 ¶¶ 17-19; Doc. 44 ¶¶ 17-19).  In those instances in which Goss called Standard Steel to report back to work on a given day, he subsequently called off sick for that day.  (Doc. 35 ¶ 18; Doc. 44 ¶ 18; Doc. 37 ¶¶ 28-29; Doc. 47 ¶¶ 28-29).  On December 13, 2011, Goss spoke with Stuter on the phone and informed him that he would likely not return that week due to how sick he was.  (Doc. 37 ¶ 31; Doc. 47 ¶ 31).

On December 15, 2011, Goss called Standard Steel and spoke with Erhart. (Doc. 35 ¶ 22; Doc. 44 ¶ 22).  According to Goss, he notified Erhart that his physician advised him that she did not need to see him and referred him to a specialist.  (Doc. 35 ¶ 24).  Goss maintains that he informed Erhart that he had an appointment with the specialist and could not return to work before that appointment.  (Id.)  Goss avers that he inquired about sick and accident ("S&A") benefits and that Erhart told him that she would mail him the relevant forms so that he could begin to receive those benefits.  (Id.)  According to Erhart, Goss informed her that he wanted to schedule an appointment with Standard Steel's occupational health department to return to work but had not seen his family doctor.  (Doc. 35 ¶ 23; Doc. 44 ¶ 23). Erhart testified that she instructed Goss to make an appointment with his physician for an initial work release and to contact the dispensary after that appointment.

(Doc. 35 ¶ 23; Doc. 44 ¶ 23).  Pursuant to company policy, a Standard Steel employee who is absent for more than six days is required to obtain an initial release from Standard Steel's occupational health department and final approval from Standard Steel's dispensary.  (Doc. 37 ¶ 32; Doc. 47 ¶ 32).

Human Resources Manager Charles O'Neill ("O'Neill") was responsible for the overall administration of the FMLA at Standard Steel.  (Doc. 35 ¶ 41; Doc. 44 ¶ 41).  On or after December 15, 2011, O'Neill directed that Goss receive S&A as well as FMLA paperwork.  (Doc. 35 ¶ 27; Doc. 44 ¶ 27).  Standard Steel's records indicate that Goss was mailed S&A paperwork but not FMLA paperwork.  (Doc. 35 ¶ 29; Doc. 44 ¶ 29).  According to Goss, he returned his S&A paperwork to Standard Steel the day that he received it.  (Doc. 47 ¶ 42).

Goss evaluated his condition on a day-to-day basis but remained at home through January 9, 2012.  (Doc. 35 ¶ 31; Doc. 44 ¶ 31; Doc. 37 ¶ 23; Doc. 47 ¶ 23). During this time, according to Goss, he "sat around being sick" and had difficulty getting out of his recliner.  (Doc. 35 ¶ 44; Doc. 37 ¶ 24; Doc. 47 ¶ 24).  Goss did not see a health care provider between December 6, 2011 and January 9, 2012.  (Doc. 37 ¶ 26; Doc. 47 ¶ 26).

On January 9, 2012, Standard Steel sent Goss a termination letter.  (Doc. 35 ¶ 32; Doc. 44 ¶ 32).  The letter stated that Goss had been absent from work for more than five working days without justification and was therefore subject to dismissal pursuant to the collective bargaining agreement between Standard Steel and Goss's union, the United Steelworkers.  (Doc. 35-15, Ex. N at 1).  As Human Resources

Manager, O'Neill was responsible for the decision to dismiss Goss. (Doc. 35 ¶ 40; Doc. 44 ¶ 40).

After Standard Steel terminated Goss, union president Jeffrey Wray ("Wray") requested that Goss provide him with documentation about his medical condition to present at a grievance hearing with Standard Steel. (Doc. 37 ¶ 35; Doc. 47 ¶ 35). Goss obtained a letter from FHA, dated January 19, 2012, that stated that Goss had been diagnosed with dysphagia and gastroesophageal reflux disease ("GERD"), that he complained of frequent abdominal pain, and that he was being seen by a gastroenterologist to address these conditions. (Doc. 35 ¶ 38; Doc. 44 ¶ 38; Doc. 37 ¶ 36; Doc. 47 ¶ 36; Doc. 37-1, Tab A at Ex. 15). Goss alleges that he was too ill to keep his appointment with the gastroenterologist on January 31, 2012. (Doc. 35 ¶ 33). Goss's union filed a grievance on his behalf but subsequently withdrew the complaint. (Doc. 37 ¶ 7; Doc. 47 ¶ 7).

On February 3, 2012, Goss fell in his bathroom. (Doc. 35 ¶ 35). Emergency medical workers found Goss minimally responsive with a weak carotid pulse and brought him to a hospital. (Id.) Goss was discharged approximately one week later with a principal diagnosis of human immunodeficiency virus and a secondary diagnosis of adrenal insufficiency. (Doc. 35 ¶ 36; Doc. 44 ¶ 36).

On March 6, 2013, Goss commenced the instant action. (Doc. 1). He brings one claim for interference with his FMLA rights on the grounds that Standard Steel failed to notify him of his FMLA eligibility and unlawfully terminated him during his absence from work due to a "serious health condition." (Id. ¶¶ 25-26). Goss moved for summary judgment on April 23, 2014. (Doc. 30). In support of his

motion, Goss attached an expert report by Dr. Paul D. Williams, D.O., FAAFP ("Dr. Williams"), dated March 31, 2014, which concluded that Goss had a "serious health condition."  On May 2, 2014, Standard Steal filed a motion to strike Dr. Williams's expert report pursuant to Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), on the grounds that the report impermissibly offers a legal conclusion, that it is not helpful to the factfinder, and that it lacks a reliable methodology.  (Doc. 39).  In his brief in opposition to Standard Steel's motion to strike, Goss attached a supplemental expert report by Dr. Williams, dated May 13, 2014.  (Doc. 45-1).  Goss disputes that Dr. Williams's original report is deficient but avers that the supplemental report cures any defects. (Doc. 45 at 3).  On June 16, 2014, Standard Steel filed a motion to strike Dr. Williams's supplemental expert report.  (Doc. 50).  In addition to the arguments it advances in connection with its motion to strike Dr. Williams's original report, Standard Steel contends that Goss offers the supplemental report for an improper purpose.  (Doc. 51 at 4-6).  On April 30, 2014, Standard Steel moved for summary judgment on Goss's FMLA claim.  (Doc. 36).  All four motions have been fully briefed and are ripe for disposition.

## II.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is "material" if it might affect the outcome of the action under applicable law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a

reasonable factfinder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The burden of proof is on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Williams v. Borough of W. Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); see also FED. R. CIV. P. 56(a), (c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

The court is permitted to resolve cross-motions for summary judgment concurrently. InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); see also Irvin v. United Mine Workers of Am. Health & Ret. Funds, No. 2:05CV1072, 2007 WL 539646, at *1 (W.D. Pa. Feb. 15, 2007); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2014). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d

946, 949 (3d Cir. 1990); see also Strategic Learning, Inc. v. Wentz, No. 1:05-CV-0467, 2006 WL 3437531, at *4 (M.D. Pa. Nov. 29, 2006).

III.   **Discussion**

The primary purposes of the FMLA are "to balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005) (quoting 29 U.S.C. § 2601(b)(1)-(2)). To accomplish these goals, the FMLA accords eligible employees up to twelve weeks of leave during any twelve-month period. 29 U.S.C. § 2612(a)(1). The FMLA makes it unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any substantive rights provided under the Act. Id. § 2615(a)(1).

To state an interference claim under the FMLA, an employee must demonstrate that (1) the employee was an eligible employee under the FMLA; (2) the employer was subject to the FMLA's requirements; (3) the employee was entitled to FMLA leave; (4) the employee gave notice to the employer of his intention to take FMLA leave; and (5) the employer denied the employee the benefits to which he was entitled under the FMLA. Criscitello v. MHM Servs., Inc., No. 4:10-CV-0200, 2013 WL 4049724, at *4 (M.D. Pa. Aug. 9, 2013) (citing Mascioli v. Arby's Rest. Grp., Inc., 610 F. Supp. 2d 419, 429 (W.D. Pa. 2009)). An employee is entitled to FMLA leave if he experiences a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29

U.S.C. § 2612(a)(1)(D).  The FMLA's implementing regulations[3] define a "serious health condition" as "an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider." 29 C.F.R. § 825.113(a).  "Continuing treatment" within the meaning of the FMLA includes a prescribed period of incapacity and treatment, as well as any period of incapacity or treatment due to a "chronic serious health condition."  Id. § 825.115(a), (c).[4]  Unlike retaliation claims under the FMLA, interference claims do not require a showing of discrimination; they concern only "whether the employer provided the employee with the entitlements guaranteed by the FMLA."  See Callison, 430 F.3d at 120.

The parties do not dispute that Goss was an eligible employee under the FMLA or that Standard Steel was subject to the Act.  (Doc. 35 ¶¶ 2-5; Doc. 44 ¶¶ 2-5). Rather, both parties move for summary judgment on the issues of entitlement and notice.  Goss contends that the undisputed facts demonstrate that he had a serious health condition, that he provided Standard Steel sufficient notice of his desire for FMLA leave, and that Standard Steel interfered with his right to FMLA leave. (Doc. 31 at 6-21).  Standard Steel argues that Goss's interference claim fails as a matter of law because Goss cannot establish that he had a serious health condition or that he provided Standard Steel with adequate notice of any such condition.

---

[3] The FMLA granted the Secretary of Labor the authority to "prescribe such regulations as are necessary to carry out" the provisions of the Act.  29 U.S.C. § 2654.

[4] A "chronic serious health condition" is a condition that requires periodic visits for treatment by a health care provider, continues over an extended period of time, and may cause episodic incapacity.  29 C.F.R. § 825.115(c)(1)-(3).

(Doc. 38 at 6-19).  In opposition to Goss's motion, Standard Steel further argues that summary judgment in its favor is appropriate because Goss cannot show that he was prejudiced by any failure to advise him of his FMLA rights.  (Doc. 43 at 17-19). The court concludes that there is no genuine issue regarding whether Goss sufficiently notified Standard Steel of a need for FMLA leave and hence does not reach whether Goss experienced a serious health condition or whether he has shown prejudice.

### A.    Employees' Notice Obligations Under the FMLA

The FMLA contemplates a "cooperative dialogue" between employees and employers with respect to the needs of each.  Shtab v. Greate Bay Hotel & Casino, Inc., 173 F. Supp. 2d 255, 257 (D.N.J. 2001).  Proper notice is an essential part of this dialogue; an employee's right to take FMLA leave is predicated on notifying his employer of a need for leave.  Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 455 (W.D. Pa. 2008).  When an employee's need for FMLA leave is foreseeable, the employee must notify the employer at least thirty days before the leave commences. 29 C.F.R. § 825.302(a).  When the need for leave is unforeseeable, the employee must inform the employer "as soon as practicable."  Id. § 825.303(a).  The notice must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request."  Id. § 825.303(b).  When an employee seeks FMLA leave for the first time, he need not expressly assert FMLA rights or even reference the FMLA.  Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 303 (3d Cir. 2012) (quoting 29 C.F.R. § 825.303(b)).  Rather, the employee must provide the employer with enough information to demonstrate that FMLA leave

11

*may* be necessary.  Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402-03 (3d Cir. 2007) (quoting Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005)).  Merely calling in sick does not constitute sufficient notice.  Jacobs v. York Union Rescue Mission, Inc., No. 1:12-CV-0288, 2013 WL 433327, at *4 (M.D. Pa. Feb. 5, 2013); 29 C.F.R. § 825.303(b).  Similarly, an employee's extended absence from work, without more, does not place the employer on notice of a serious health condition.  Wilson v. Kuhn's Quality Foods, No. 05-511, 2006 WL 2709384, at *10 (W.D. Pa. Sept. 20, 2006); see also Andrews v. CSX Transp., Inc., 737 F. Supp. 2d 1342, 1351 (M.D. Fla. 2010) ("A period of absence alone is not adequate notice under the FMLA." (citing Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311 (7th Cir. 2006)).  Indeed, the employee must identify the reason for leave with some degree of specificity.  Hayduk , 580 F. Supp. 2d at 456; see also 29 C.F.R. § 825.301(b) ("An employee giving notice of the need for FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act.").  Courts of appeals that have found an employee's notice deficient have typically concluded that the employee failed to communicate the basis for his leave.  See Sarnowski, 510 F.3d at 403 (citing cases in which employees failed to inform their employers that their absences were due to serious health conditions); see also Woods, 409 F.3d at 990 ("Employees . . . have an 'affirmative duty to indicate both the need and the reason for the leave.'" (quoting Sanders v. May Dep't Stores Co., 315 F.3d 940, 944 (8th Cir. 2003))).

While an employee's notice obligations under the FMLA are not burdensome, "[t]he FMLA does not require an employer to be clairvoyant."

Hayduk , 580 F. Supp. 2d at 471 (alteration in original) (quoting Brenneman v. MedCentral Health Sys., 366 F.3d 412, 428 (6th Cir. 2004)); see also Sarnowski, 510 F.3d at 402 (noting that the FMLA's notice requirement should be liberally construed).  The critical inquiry, according to the Third Circuit, "is how the information conveyed to the employer is reasonably interpreted."  Sarnowski, 510 F.3d at 402; see also Petras v. IAP Worldwide Servs., Inc., No. 07-170, 2008 WL 5395750, at *11 (D.N.J. Dec. 23, 2008) ("[T]he critical question is whether the information imparted to the employer is sufficient to *reasonably apprise* it of the employee's request to take time off for a serious health condition." (quoting Holpp v. Integrated Commc'ns Corp., No. 03-3383 (WGB), 2005 WL 3479682, at *5 (D.N.J. Dec. 20, 2005), aff'd, 214 F. App'x 176 (3d Cir. 2007))).  This is generally a question of fact, but courts may hold an employee's notice insufficient as a matter of law when the undisputed facts would not permit a reasonable factfinder to conclude otherwise.  Lichtenstein, 691 F.3d at 303 & n.14.  An employee's interference claim cannot survive summary judgment when the employee's notice is "patently insufficient" to inform the employer that the need for leave may be due to a serious health condition.  Phinizy v. Pharmacare, 569 F. Supp. 2d 512, 515 (W.D. Pa. 2008) (quoting Lackman v. Recovery Servs. of N.J., Inc., No. 06-2016 RMB, 2008 WL 583660, at *4 (D.N.J. Feb. 13, 2008)).

**B.    Employers' Notice Obligations Under the FMLA**

The FMLA also imposes notice obligations on employers.  As a general matter, employers subject to the FMLA are required to display conspicuously an explanation of the rights accorded by the FMLA and the procedures for filing

complaints with the Wage and Hour Division.  29 C.F.R. § 825.300(a)(1).  When an employee requests FMLA leave or an employer discovers that an employee's absence may be due to a FMLA-qualifying reason, the employer must notify the employee whether he is eligible for FMLA leave.  Id. § 825.300(b)(1).  In connection with eligibility determinations, employers are required to provide written notice to employees of their rights and responsibilities under the FMLA.  Id. § 825.300(c)(1).  Among other provisions, this notice must disclose that the requested leave may be counted against the employee's annual FMLA leave allocation, state whether the employee is required to provide a certification of a serious health condition, and explain the consequences for failing to provide the requisite certification.  Id. § 825.300(c)(1)(i)-(ii).  An employer may require that a health care provider issue the certification.  Id. § 825.305(a).[5]  When an employer possesses sufficient information to determine whether the requested leave is for a FMLA-qualifying reason—such as a serious health condition—it must notify the employee in writing whether or not it will count the time off as FMLA leave.  Id. § 825.300(d)(1), (4).  These notice obligations are designed "to ensure that employers allow their employees to make informed decisions about leave."  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 144 (3d Cir. 2004) (quoting Nusbaum v. CB Richard Ellis, Inc., 171 F. Supp. 2d 377, 385-86 (D.N.J. 2001)).  An employer's failure to notify an employee of his

---

[5] An employer's request for a medical certification pursuant to the FMLA provides "strong evidence" that the employer viewed the employee's leave as FMLA-qualifying.  Peter v. Lincoln Technical Inst., Inc., 255 F. Supp. 2d 417, 441 (E.D. Pa. 2002).

FMLA rights may constitute interference with those rights.  <u>Lupyan v. Corinthian Colls. Inc.</u>, 761 F.3d 314, 318 (3d Cir. 2014); 29 C.F.R. § 825.300(e).

To the extent that an employer does not have enough information to determine whether the requested leave is for a FMLA-qualifying reason, it should inquire further about the basis for the leave.  29 C.F.R. § 825.301(a); <u>see</u> <u>also</u> <u>Lichtenstein</u>, 691 F.3d at 305 ("[I]f an employee's initial notice reasonably apprises the employer that FMLA may apply, it is the employer's burden to request additional information if necessary.").  This duty is only triggered, however, when the employee initially provides the requisite quantum of notice.  <u>De Luca v. Trustees of Univ. of Pa.</u>, 834 F. Supp. 2d 282, 290, 293 (E.D. Pa. 2011).  An employer need not interpret every absence or request for leave as potentially FMLA-qualifying.  Such a requirement would place "a substantial and largely wasted investigative burden on employers."  <u>Id.</u> at 291 (quoting <u>Aubuchon v. Knauf Fiberglass GmbH</u>, 359 F.3d 950, 953 (7th Cir. 2004)).

### C.    Sufficiency of Goss's Notice

In the case *sub judice*, Goss contends that he provided Standard Steel adequate notice of his need for FMLA leave.  Goss points to his demeanor at work on December 5, 2011; his calls to Standard Steel between December 6 and December 13, 2011 in which he reported off sick; Standard Steel's notation of his absences as "sick;" his December 15, 2011 conversation with Erhart; and O'Neill's directive that he be sent S&A and FMLA paperwork.  (Doc. 31 at 15-18; Doc. 46 at

17-20).[6]  Viewing the evidence in the light most favorable to Goss, these circumstances—individually and in their totality—fail to create a genuine issue of material fact regarding the sufficiency of Goss's notice.

With respect to Goss's behavior on the morning of December 5, 2011, Stuter testified that a Standard Steel employee indicated that there was something wrong with Goss and that Stuter should speak with him.  (Doc. 35-14, Ex. M at 17:15-19).  Stuter found Goss ambling around his machine in a daze with "glassy" eyes and slurred speech.  (Id. at 17:19-22).  Goss informed Stuter that he did not know what was wrong with him.  (Id. at 17:22-24).  Stuter told Goss that he could not work in that state and transported him to the dispensary to see Erhart.  (Id. at 18:2-8).  Stuter testified that at no point during or after the incident did Goss inform Stuter what was wrong with him that day.  (Id. at 18:20-23).[7]

Erhart testified that Goss looked tired and was unsteady on his feet when he visited the dispensary on December 5, 2011.  (Doc. 35-7, Ex. F at 21:20-22, 23:16-17).  Goss informed Erhart that he had taken a sleeping pill very late and did not receive enough sleep.  (Id. at 23:17-21).  Erhart directed Goss to return home due to the safety risk that he posed.  (Id. at 22:14-16; Doc. 35-15, Ex. N at 2).  Notably, Erhart did not instruct Goss to go to the emergency room.  (Doc. 35-7, Ex. F at 22:5-16); cf. Lichtenstein, 691 F.3d at 304, 305 n.16 (finding notice potentially adequate when

---

[6] The court notes that Goss does not advance any claims based upon his August 18, 2011 and October 25, 2011 work excuses from FHA.  These excuses state only that Goss was unable to work on certain days but omit the nature and severity of the conditions for which he sought care.

[7] Stuter noted that Erhart called him later that day and explained why she had sent Goss home.  (Doc. 44-1, Tab A at 19:4-19).

plaintiff conveyed that she was in an emergency room with her ill mother and would not be able to work that day, and distinguishing a disclosed trip to the emergency room via ambulance from a "generic reference" to a hospital visit); Parker v. City of Williamsport, 406 F. Supp. 2d 534, 539, 542 (M.D. Pa. 2005) (holding that plaintiff's request for FMLA leave was sufficient when he informed his employer about a visit to the emergency room for psychological treatment and provided an emergency room document stating that he would not be able to return to work until he saw his primary care physician).  Goss does not dispute Stuter's or Erhart's testimony on this issue.

Goss's behavior on December 5, 2011 was not sufficient to put Standard Steel on notice that he may have had a serious health condition.  The record contains no evidence that Goss conveyed to Standard Steel the potential causes of his disorientation, that the incident may have been connected to earlier absences, or that his condition was anything other than temporary.  The record is also devoid of evidence that Goss informed Standard Steel that he consulted a health care provider regarding this incident or that his subsequent absences may have been related to his condition on December 5, 2011.  Given this dearth of contemporaneous or subsequent explanation or medical information, coupled with Erhart's uncontroverted testimony that Goss informed her that he took a sleeping pill late the night before, Standard Steel could not have "reasonably interpreted"

that Goss possessed a serious health condition or sought FMLA leave from his behavior on December 5, 2011.  See Sarnowski, 510 F.3d at 402.[8]

Goss's calls to Standard Steel between December 6 and December 13, 2011 also fail to create a genuine issue regarding notice.  The record reveals that Goss called off sick in advance of his scheduled shifts on at least December 6, 2011, December 8, 2011, and December 12, 2011.  (Doc. 35 ¶ 19; Doc. 37 ¶¶ 27-28).[9]  On December 13, 2011, Goss called Standard Steel and spoke with Stuter.  (Doc. 35 ¶ 20; Doc. 44-1, Tab A at 20:25-21:11).  According to Goss, he informed Stuter that he would "probably not" attend work the rest of that week "because of how sick [he] was."  (Doc. 37-1, Tab A at 76:16-22).  Goss further explained that Stuter stated that he would ensure Goss's shifts were covered "just in case [he] can't make it."  (Id. at 76:22-24).  Stuter testified, by contrast, that Goss informed him that he would be out for the next four or five days but did not disclose why he would be absent.  (Doc. 44-1, Tab A at 21:12-22:6).

---

[8] To the extent that an employee may place his employer on *constructive notice* of his need for FMLA leave when there is a dramatic and observable change in his condition, see Hayduk, 580 F. Supp. 2d at 455 n.16 (citing Seventh Circuit precedent establishing an exception to an employee's FMLA notice requirements), the court concludes that Goss's behavior on December 5, 2011 was not sufficiently unusual or extreme to constitute constructive notice, cf. de la Rama v. Ill. Dep't of Human Servs., 541 F.3d 681, 687 (7th Cir. 2008) (noting that "[t]he FMLA does not require employers to play Sherlock Holmes" and, notwithstanding an earlier incident in which plaintiff went to the emergency room from work, finding no evidence that plaintiff experienced a dramatic change in behavior that would excuse her from complying with her notice obligations).

[9] Goss initially reported to work in advance of his December 8, 2011 and December 10, 2011 shifts, but later called off sick for those shifts.  (Doc. 37 ¶¶ 28-29).

Calling in sick, without providing additional information, does not put an employer on notice of a potential need for FMLA leave.  Jacobs, 2013 WL 433327, at *4; see also Naber v. Dover Healthcare Assocs., Inc., 765 F. Supp. 2d 622, 636 n.105 (D. Del. 2011) ("'[S]ick' does not imply 'a serious health condition.'" (quoting Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001))), aff'd, 473 F. App'x 157 (3d Cir. 2012).  Construing the evidence in Goss's favor, the record simply does not support a finding that Goss provided Standard Steel with enough additional information about his condition during these calls.  Goss concedes that he did not convey the nature or severity of his illness to the company security guards, only that he was sick.  (See Doc. 37 ¶ 34).  Goss's December 13, 2011 conversation with Stuter revealed little more.  Assuming that Goss expressed that he was sick and would likely be absent for several days due to illness, he communicated this information only in general terms and failed to convey any additional facts about his condition from which Stuter could reasonably infer that he was requesting FMLA leave due to a serious health condition.  Cf. Beaver v. RGIS Inventory Specialists, Inc., 144 F. App'x 452, 456 (6th Cir. 2005) (finding notice inadequate when plaintiff informed her employer over the phone that she was "sick" and "needed a couple of days to get better," and provided a doctor's note stating that she would need to delay her return to work).[10]  Finally, the undisputed fact that Goss initially reported to work

---

[10] The court recognizes that Beaver is a non-precedential opinion from outside this circuit but nevertheless finds persuasive the court's *ratio decidendi* with respect to the sufficiency of plaintiff's notice under the FMLA.

on at least two occasions during his absence weakens his assertion that Standard

Steel had reason to know that he had a serious health condition.[11]

     That Standard Steel continued to record Goss's absences as "sick" following

his December 13, 2011 phone conversation with Stuter (see Doc. 35 ¶ 31; Doc. 35-15,

Ex. N at 10) does not support an inference that Standard Steel believed that Goss's

absences may have been FMLA-qualifying.  Goss testified that pursuant to

Standard Steel's attendance policy an employee who calls off sick remains off until

that employee reports back to work.  (Doc. 37-1, Tab A at 53:23-54:3, 58:11-22).  Goss

called off sick for his shift on December 12, 2011 and did not report back to work

after that point.  (Doc. 47 ¶ 30).  It comes as no surprise, then, that Standard Steel

continued to mark Goss as sick until his termination on January 9, 2012.  Of course,

merely calling in sick—whether actively or passively—does not satisfy an

employee's notice obligations under the FMLA.

     Goss further contends that his conversation with Erhart on December 15,

2011 provided sufficient notice of a need for FMLA leave.  The parties dispute the

content of this exchange.  Standard Steel maintains that, consistent with Erhart's

testimony and notes, Goss informed Erhart that he wished to return to work but

that he had not seen his primary care physician, and that Erhart instructed him to

make an appointment with his physician to obtain a medical release pursuant to

company policy.  (Doc. 35 ¶ 23; Doc. 44 ¶ 23).  Goss testified, on the other hand, that

he notified Erhart that he had spoken with his family doctor, who advised him that

---

[11] O'Neill testified that he reviewed Goss's December 2011 call-on and call-off records prior to terminating Goss.  (Doc. 35-10, Ex. I at 38:2-21).

she did not need to see him and referred him to a specialist. (Doc. 35-5, Ex. D at

63:6-10). Goss purportedly informed Erhart that he would not be able to return to

work until after his appointment with the specialist and avers that Erhart directed

him to contact the dispensary after that appointment. (Id. at 63:10-12, 65:12-14).

Viewing the disputed evidence in the light most favorable to Goss, the court

finds that Goss's conversation with Erhart failed to inform Standard Steel of his

intention to take FMLA leave due to a serious health condition, and therefore failed

to trigger any duty on the part of Standard Steel to investigate further. The record

does not indicate that Goss provided any substantive information to Erhart about

his illness. Goss did not, for example, assert that he was suffering from a serious

condition, discuss the nature or severity of his condition, describe any in-person

visits with health care providers, convey any diagnoses, connect his December 2011

absences with earlier work excuses, or offer any medical documentation that would

tend to show that he may have had a serious health condition.[12]

Courts have routinely concluded that an employee's notice was legally

deficient when the employee failed to communicate any specific information about

his medical condition. See, e.g., Phillips, 450 F.3d at 312 (holding that plaintiff's

request for FMLA leave was insufficient when she "failed to convey any information

regarding the nature of her medical problem"); De Luca, 834 F. Supp. 2d at 294-95

(concluding as a matter of law that plaintiff failed to supply proper notice of her

---

[12] The court notes these omissions by way of illustration only and does not
hold that an employee must fulfill each of these conditions to satisfy the employee's
FMLA notice obligations.

need for leave to care for her adopted child when, *inter alia*, plaintiff neglected to provide her employer with "any details about the child's condition."); <u>Rosenfeld v. Canon Bus. Solutions, Inc.</u>, No. 09-4127 JBS/KMW, 2011 WL 4527959, at *9 (D.N.J. Sept. 26, 2011) (dismissing on summary judgment plaintiff's FMLA interference claims with respect to his insomnia before May 2008 on the grounds that plaintiff failed to apprise his employer of his condition before that date); <u>Kerns v. Drexel Univ.</u>, No. 06-5575, 2009 WL 2004378, at *12 (E.D. Pa. July 8, 2009) (granting summary judgment in favor of employer when, *inter alia*, plaintiff did not convey any of his symptoms or assert that he suffered from a serious health condition); <u>Wilson</u>, 2006 WL 2709384, at *10 (finding that plaintiff's telephone calls and letters to her employer averring that she was sick and required time off work, which "provided no information about her condition," did not put her employer on notice that she had a serious health condition).

Conversely, the vast majority of cases in this circuit that have found notice potentially adequate have done so when the employee provided at least some information about his condition.  <u>See</u>, <u>e.g.</u>, <u>Sarnowski</u>, 510 F.3d at 403 (finding a genuine issue regarding the sufficiency of plaintiff's notice when he informed his employer that additional cardiac surgery may be necessary and "conveyed what information he had and made it clear . . . that his health problems were continuing"); <u>Treaster v. Conestoga Wood Specialties, Corp.</u>, No. 4:09-CV-00632, 2010 WL 2606479, at *26 (M.D. Pa. Apr. 29, 2010) (holding that a reasonable juror could conclude that plaintiff provided sufficient notice with respect to a specific absence when she informed her employer that she had mental health issues and

that her medications for these conditions caused drowsiness), <u>adopted by</u> No. 4:09-CV-632, 2010 WL 2606481 (M.D. Pa. June 25, 2010); <u>Pinson v. Berkley Med. Res., Inc.</u>, No. 03-1255, 2005 WL 3210950, at *17 (W.D. Pa. June 21, 2005) (concluding that a work excuse from plaintiff's physician constituted sufficient notice when, *inter alia*, plaintiff "repeatedly" informed her employer about her neck and back condition); <u>Wilson v. Lemington Home for the Aged</u>, 159 F. Supp. 2d 186, 191-92 (W.D. Pa. 2001) (finding that plaintiff gave sufficient notice of her need for FMLA leave when she informed her employer about her digestive issues, although not her ultimate diagnosis of depression, and stated that her physician had advised her to remain home for approximately one month).

In the instant matter, Goss has not adduced evidence that he communicated to Standard Steel any substantive information about the nature of his condition prior to his termination.  <u>Cf.</u> <u>Hayduk</u>, 580 F. Supp. 2d at 456 ("The employee must state the reason for the leave with some specificity . . . .").  Of course, the evidence implies that Goss did not become aware of certain underlying medical issues until well after his termination.  Nevertheless, the record does not support an inference that Goss conveyed "what information he had," <u>see</u> <u>Sarnowski</u>, 510 F.3d at 403, as preliminary as that information may have been.

With respect to his December 15, 2011 conversation with Erhart, the record indicates only that Goss communicated that he was sick, had spoken with his family doctor about an unspecified illness, and would not be able to return to work until he

saw a specialist at some undisclosed point in the future.[13]   A mere period of absence from work, however, does not put an employer on notice of a serious health condition.   Wilson, 2006 WL 2709384, at *10.   And while expressing an inability to work may buttress the sufficiency of an employee's notice, something more is required to survive summary judgment.   See Lichtenstein, 691 F.3d at 304-05 (finding a genuine dispute regarding the sufficiency of plaintiff's notice when plaintiff informed her employer that she was in the emergency room with her ill mother and would be unable to work that day); Viereck v. City of Gloucester City, 961 F. Supp. 703, 707 (D.N.J. 1997) (finding plaintiff's notice adequate when she explained the "nature and extent of her injuries," stated that she had been hospitalized, and told her employer that she would not be able to return to work in the near future due to her injuries).   Indeed, the very act of calling in sick—which

---

[13] Standard Steel cites Perk v. Nyrstar Clarksville, Inc., No. 3:12-0913, 2014 WL 1379170, at *3 (M.D. Tenn. Apr. 8, 2014), for the proposition that incapacitation under the FMLA requires more than an employee's unsupported assertion that the employee could not work due to illness.  (Doc. 38 at 18; Doc. 49 at 11).  Perk is inapposite to the notice inquiry, however, because it concerns the standards for demonstrating a serious health condition rather than an employee's notice obligations.

fails to satisfy an employee's notice obligations under the FMLA—generally implies that the employee is unable to work on one or more days.[14]

Finally, Goss argues that the undisputed fact that Standard Steel failed to send him FMLA paperwork after O'Neill directed it to is enough to defeat summary judgment.  The court ultimately disagrees.[15]  O'Neill testified that Standard Steel sent employees FMLA paperwork as a matter of "standard course" and "just to make sure that we covered our bases and gave the employee every opportunity to

---

[14] Goss also asserts that he discussed his eligibility for S&A benefits with Erhart and that Erhart indicated that she would send him S&A paperwork to complete.  (Doc. 35-5, Ex. D at 62:3-8, 63:16-18).  Erhart testified that she had no role in the administration of S&A benefits but may have referred Goss to human resources "because he's been off so many days that he would be eligible for sick and accident benefits."  (Doc. 35-7, Ex. F at 36:20-37:14).  This exchange does not assist Goss.  Goss offers no evidence that eligibility for S&A benefits bears any relation to entitlement to FMLA rights.  Erhart's observation that Goss may have qualified for S&A benefits merely because he had been absent for a number of days suggests that eligibility for S&A benefits at Standard Steel depends on the length of an employee's absence.  Indeed, O'Neill testified that he believed that an hourly unionized employee becomes eligible for S&A benefits after an absence of seven calendar days.  (Doc. 35-10, Ex. I at 65:12-67:3).  As the court explained *supra*, a period of absence alone does not apprise an employer of a need for FMLA leave.  See Wilson, 2006 WL 2709384, at *10.

[15] The court acknowledges that this is a close case.  On the one hand, Goss has adduced evidence that O'Neill instructed Standard Steel to send him FMLA documentation.  On the other, Goss has failed to demonstrate that he provided Standard Steel with any meaningful information about his condition from which it could reasonably infer that he had a serious health condition.  Indeed, O'Neill's instruction to send FMLA paperwork appears to have been merely a perfunctory decision predicated on the length of Goss's absence.  Moreover, Goss informed Standard Steel that he was prepared to work on certain days during his absence before calling off sick on those same days, which indicates the lack of a serious health condition.  Under the totality of the circumstances, a reasonable factfinder could not conclude that Goss's notice was sufficient.  Given these unique circumstances, the court must limit its analysis to the facts of this case, which fail to establish the threshold employee notice.

have a covered absence." (Doc. 35-10, Ex. I at 37:3-38:1).[16]  The record reveals that

Standard Steel's *sua sponte* decision to send FMLA documentation was based on

administrative expedience rather than on a reasonable inference that Goss's

absence may have been FMLA-qualifying.  O'Neill did not concede that Standard

Steel had reason to believe that the FMLA applied to Goss's absence; rather, he

testified that Goss failed to notify Standard Steel that he had a serious health

condition or that he required FMLA leave.  (Id. at 50:23-51:20 ("[Goss] never

provided documentation written or verbally to indicate that it was a serious health

condition or should be considered a serious health condition.")).  Even assuming

that Standard Steel's failure to provide Goss with FMLA paperwork was

inconsistent with company policy, that failure does not give rise to an interference

claim unless Goss first provided Standard Steel proper notice of a potential need for

FMLA leave.  See Hayduk, 580 F. Supp. 2d at 455 ("An employee's right to take

FMLA leave, even unplanned leave, is conditioned on his notice to his employer."

---

[16] O'Neill's recognition of a remote possibility that the FMLA may have
applied to Goss's absence falls short of creating a genuine issue regarding whether
Goss satisfied his notice obligations under the relevant standard.  While the FMLA
may *conceivably* apply to any absence due to illness, the relevant inquiry is whether
an employee provided his employer with enough information from which the latter
can *reasonably* determine whether the FMLA may apply.

(citing <u>Aubuchon</u>, 359 F.3d at 951-52)).  The court finds that a reasonable trier of

fact could not conclude that Goss satisfied this requirement.[17]

The court holds that, as a matter of law, Goss did not adequately notify

Standard Steel prior to his termination of a need for FMLA leave due to a serious

---

[17] The court notes an apparent dispute regarding the extent to which Standard Steel requested documentation from Goss justifying his absences in December 2011 and January 2012.  O'Neill testified that he had multiple telephone conversations with Goss prior to his termination in which he informed Goss that he needed to provide documentation to substantiate his absences before he could return to work.  (Doc. 44-1, Tab C at 44:14-45:18, 47:25-48:9).  According to O'Neill, Goss never provided the appropriate documentation.  (<u>Id.</u> at 48:20-22; Doc. 35-15, Ex. N at 3).  Similarly, Wray testified that he spoke with Goss on several occasions—both prior to and following his termination—and instructed Goss to provide a medical excuse for his absences.  (Doc. 44-1, Tab D at 23:9-17, 41:14-42:7).  In response to these entreaties, Goss provided a letter from FHA, dated January 19, 2012, that stated that Goss had been diagnosed with GERD.  (<u>See id.</u> at 41:25-42:7; Doc. 37-1, Tab A at Ex. 15).  Goss testified that he did not recall speaking with either O'Neill or a union representative between December 6, 2011 and January 9, 2012.  (Doc. 47-3, Ex. B at 81:18-82:3).

To the extent that Goss neglected to provide documentation to substantiate his absences prior to his termination upon repeated requests from Standard Steel, the sufficiency of his notice is undermined.  <u>Cf.</u> <u>Golevski v. Home Depot U.S.A., Inc.</u>, 143 F. App'x 638, 644 (6th Cir. 2005).  The court acknowledges that <u>Golevski</u> is a non-precedential opinion from outside this circuit but nonetheless finds the court's *ratio decidendi* persuasive.  Moreover, the January 19, 2012 letter from FHA—even if it were sufficient to apprise Standard Steel that Goss had a serious health condition—does not cure Goss's failure to notify Standard Steel of a need for FMLA leave prior to his termination.  <u>See</u> <u>Aubuchon</u>, 359 F.3d 950 at 953 ("Employees should not be encouraged to mousetrap their employers by requesting FMLA leave on patently insufficient grounds and then after the leave is denied obtaining a doctor's note that indicates that sufficient grounds existed, though they were never communicated to the employer."); <u>Kerns</u>, 2009 WL 2004378, at *12 (finding that plaintiff did not provide notice of a serious health condition "as soon as practicable" and that any subsequent notice was "untimely"); <u>Wilson</u>, 2006 WL 2709384, at *10 (reasoning that an employee cannot demonstrate notice by relying on evidence that she did not offer her employer within the relevant time period).  Construing the record in Goss's favor and assuming that Standard Steel did not request documentation regarding his absences prior to January 9, 2012, a reasonable factfinder still could not conclude that Goss properly notified Standard Steel of a potential need for FMLA leave due to a serious health condition.

health condition.  The limited communications and circumstances that Goss cites—

both individually and in their totality—are not enough to withstand summary

judgment under controlling authority.[18]

**IV.** __Conclusion__

For all of the foregoing reasons, the court will grant Standard Steel's motion

for summary judgment, deny Goss's motion for summary judgment, and deny as

moot Standard Steel's motions to strike the original and supplemental expert

reports of Dr. Williams.  An appropriate order will issue.


        /S/ CHRISTOPHER C. CONNER
        Christopher C. Conner, Chief Judge
        United States District Judge
        Middle District of Pennsylvania


Dated:      November 26, 2014

---

[18] The court emphasizes that it is not unsympathetic to Goss's health issues. Given the limited scope of this memorandum, however, the court need not address whether Goss suffered from a serious health condition.  See Scobey v. Nucor Steel-Arkansas, 580 F.3d 781, 790 (8th Cir. 2009) ("Having failed to provide adequate and timely notice, any argument about whether [plaintiff] actually had a serious health condition during the relevant time period is moot.").